UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| MARELLI AUTOMOTIVE LIGHTING USA LLC, *et al.*[1] | : | Case No. 25-11034 (CTG) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **RE: D.I. 352** |
| | : | |

**OBJECTION OF FIRST BRANDS GROUP, LLC TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

First Brands Group, LLC ("FBG"), by and through its attorneys, files this objection (the "Objection") to the *Motion of Debtors for Entry of an Order Granting Relief from the Automatic Stay* (the "Motion")[2] [Docket No. 352]. In support of the Objection, FBG states as follows:

**PRELIMINARY STATEMENT**

1. The Court should deny the Debtors' Motion because it seeks to re-litigate the same issues and make the same arguments that were already rejected by the Arbitral Tribunal. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ lifting the automatic stay in the manner requested by the Debtors would violate the principle of comity, unnecessarily prejudice FBG, and could potentially result in the

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/Marelli. The location of Marelli Automotive Lighting USA LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 26555 Northwestern Highway, Southfield, Michigan 48033.

[2] Capitalized terms not defined herein shall have such meanings ascribed to them as in the Motion.

175317841.7

diminution of the Debtors' estates.  The Debtors should also not be permitted to exploit the benefits of the automatic stay to gain a litigation advantage, while simultaneously placing all the attendant burdens solely onto FBG.  If the Court is inclined to grant the Motion, the Court should fully lift the stay, including relief to allow any setoff of FBG's counterclaim, to the extent applicable.

## BACKGROUND

**A.     General Bankruptcy Background**

2.     On June 11, 2025 (the "Petition Date"), Marelli Automotive Lighting USA LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), including Marelli Europe S.p.A. ("Marelli Europe", together with FBG, the "Parties"), each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3.     By Order entered on June 12, 2025, the Bankruptcy Court consolidated the Debtors' cases for procedural purposes only and ordered the joint administration of the Debtors' cases under *In re Marelli Automotive Lighting USA LLC, et al.*, Case No. 25-11034 (CTG) (the "Chapter 11 Cases") [Docket No. 102].

4.     A comprehensive description of the Debtors' businesses and operations, capital structure, and the events leading to the commencement of the Chapter 11 Cases can be found in the *Declaration of David Slump, Chief Executive Officer of Marelli Automotive Lighting USA, LLC, in Support of First Day Motions* (the "First Day Declaration") [Docket No. 20].

5.     Also on the Petition Date, the Debtors filed the *Motion of Debtors Seeking Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and* Ipso Facto *Protections of the Bankruptcy Code, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief* (the "Stay Enforcement Motion") [Docket

No. 9], seeking the entry of an Order that would (i) restate and enforce a worldwide automatic stay as to the Debtors and (ii) authorize the form and manner of a notice that the Debtors could serve on parties to notify them of the scope and effect of the automatic stay. On June 12, 2025, the Court entered an Order granting the Stay Enforcement Motion (the "Stay Enforcement Order") [Docket No. 111].

6. On July 30, 2025, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (the "DIP Order") [Docket No. 449], authorizing the Debtors to enter into certain agreements to obtain post-petition financing. Notably, pursuant to the Milestones of the DIP Credit Agreements, the Debtors are required to confirm a plan (the "Chapter 11 Plan") by no later than December 8, 2025. *See* Junior DIP Credit Agreement [Docket No. 329] at Schedule IV, ¶ 8.

**B.    The Arbitration**



3

175317841.7

██████████████████████████████████████████████████████████████

████████████████████████████████████████

　　████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

　　████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████

　　████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

　　████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████

　　████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

　　　　████████████████████████████████████████████████████

4



## OBJECTION

### A. The Arbitral Stay Order is entitled to Comity

17. ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████. In the interests of comity and international cooperation, this Court should grant deference ████████████████████████████████████████████

████ and conclude that the Arbitration should be stayed, pending the resolution of these Chapter 11 Cases.

18. "Under the principle of international comity, a domestic court normally will give effect to executive, legislative, and judicial acts of a foreign nation." *Remington Rand Corp.-Delaware v. Bus. Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987). Although the Arbitration is not a governmental proceeding, "the Supreme Court has indicated that comity and other important concerns favor respect for international arbitration." *BlackBerry Ltd. v. Nokia Corp.*, 2018 WL 5630584, at *3 n.2 (D. Del. Oct. 31, 2018) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614, 629 (1985)); *see also URS Corp. v. Lebanese Co. for Dev. & Reconstr. of Beirut Cent. Dist. SAL*, 512 F. Supp. 2d 199, 210 (D. Del. 2007) (concluding that "comity" and the "purposes of the New York Convention" favored deference to ICC arbitration).

19. "Moreover, judicial acts need not always be final judgments to be granted comity." *Remington Rand*, 830 F.3d at 1266 (citing *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir. 1971)).

20. "Courts generally consider the following factors to determine whether to afford comity to a foreign country judgment: (1) whether the judgment was entered by a competent court, having both personal and subject-matter jurisdiction; (2) whether the judgment was brought upon due allegations and proofs, giving the parties the opportunity to defend against the claims; (3) whether the judgment was entered in a clear and formal record; and (4) whether there is any special ground to impeach the judgment." *In re Cortuk*, 633 B.R. 236, 265 (Bankr. D.N.J. 2021) (citing *Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 472 (D.N.J. 2001). The "polestar" consideration is "whether a reasonable method of notification is employed and reasonable opportunity to be heard is afforded to the person affected." *Somportex*, 453 F.2d at 443.

21. After a showing that a decision is entitled to comity, the burden shifts to the party opposing comity to show that the order "violates American policy notions of what is decent and just." *In re Neves*, 570 B.R. 420, 427 (Bankr. S.D. Fla. 2017). This burden is "high and unfrequently met" and is applicable only in "clear-cut cases." *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986).

22. First, the Arbitral Tribunal of the International Chamber of Commerce ("ICC") is a competent adjudicative body with both personal and subject-matter jurisdiction over the parties to the Arbitration ▮▮▮▮▮▮▮▮▮▮

175317841.7

██████████████████████████████████████████████████████████████. The Arbitral Tribunal's authority to adjudicate the claims and counterclaims ███████████ is thus firmly established, and there is no dispute as to the Arbitral Tribunal's competence or its jurisdiction over the subject matter or the parties.

23.     Second, the Parties were afforded full and fair opportunities to present their positions to the Arbitral Tribunal regarding the propriety of staying the Arbitration. █████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████. The Parties were thus given ample opportunity to defend against each other's legal and factual contentions ███████ ██████████████████████████████████████████████████████████████████████████████ ███████ The process was adversarial, transparent, and consistent with fundamental principles of due process.

████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

25.     Finally, █████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

███████████████████████████████████████

███. There is no evidence of fraud, bias, or any other irregularity that would warrant denial of comity to the Arbitral Tribunal's decision. Accordingly, the decision is entitled to full respect and deference by this Court.

26. Based on the facts and circumstances of this case, FBG submits that the Court should defer to the Arbitral Tribunal's conclusions in the interests of comity and stay the Arbitration, pending the resolution of the Chapter 11 Cases.

B. **Asymmetrical Bifurcation of the Arbitration would Unnecessarily Prejudice FBG**

27. Section 362(a) of the Bankruptcy Code defines the scope of the automatic stay in relevant part:

> [A] petition filed under . . . this title . . . operates as a stay . . . of
>
> (1) The commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> . . .
> (3) Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> . . .
> (6) Any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a).

28. Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such

8

party in interest." 11 U.S.C. § 362(d)(1). Accordingly, the bankruptcy court "shall" lift the automatic stay for "cause." *Id*.

29. However, 11 U.S.C. § 362(d)(1) does not define "cause," leaving courts to consider the totality of the circumstances in each particular case. *In re Project Orange Assoc., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010); *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, (3d Cir. 1997); *Izzarelli v. Rexene Products Co. (In re Rexene Products)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). *See also In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004) ("'Cause' is an intentionally broad and flexible concept that must be determined on a case-by-case basis."); *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995) (finding that "cause" for modification of the automatic stay is "an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations") (citations omitted).

30. In deciding whether litigation should proceed in another forum, bankruptcy courts analyze three primary factors: "(1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (Bankr. D. Del. 1993) (citing *In re Fernstrom Storage & Van Co.*, 983 F.2d 731, 734-37 (7th Cir. 1991)).

31. Contrary to the Debtors' assertions that granting the requested relief would result in "[n]o prejudice to either Marelli Europe or FBG" and that it would "promote efficiency and forego unnecessary expense," ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

9

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████.

33.      In balancing the weight of the hardships facing the Parties, the Debtors also seem to suggest that lifting the automatic stay will inure to FBG's benefit because "should FBG prevail, it will be permitted to file a proof of claim on account of such judgment." *See* Motion at ¶ 26. However, this perfunctory analysis fails to recognize the procedural and economic realities of the situation. On the one hand, if the relief requested is granted and Marelli Europe prevails in the Arbitration, Marelli Europe will be entitled to execute on its judgment immediately and seek a full recovery directly from FBG. On the other hand, to the extent the Arbitration continues and FBG is successful in prosecuting its counterclaim, submitting a proof of claim for any awarded damages and sharing in *pro rata* distributions at some unknown future point with other unsecured creditors is not the boon the Debtors suggest it is.

33.      There is also a real probability that the continued pursuit of the Arbitration will in fact result in the dilution of the value of the estates, as the Debtors stand to incur significant litigation expenses in addition to potential liability for a substantial amount of damages. The Third Circuit has previously held that proceedings should be stayed in this exact circumstance: when the "scope of the parties' [arbitral] submissions support[] an award that could diminish the debtors' estate," it is "necessary for the arbitration proceeding to halt." *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006). "By continuing beyond this point," a proceeding "violates § 362(a)(1) . . . ." *Id.* *Acands* plainly applies here, and accordingly ████████

████████████████████████████████████████████████████████████

175317841.7

34. Despite this, Marelli does not meaningfully address *Acands*; instead, it simply asserts that *Acands* is distinguishable because it involved the termination of "insurance coverage" and this case does not. *See* Motion at 10 n.8. Marelli's motion fails to engage with *Acands*' logic: that the "procedural flexibility" of arbitration, which allows the Arbitral Tribunal to hold the Debtor at fault even without a formal counterclaim, makes it infeasible to "distinguish between claims and counter-claims," and so requires the entire "arbitration proceeding to halt" once "the parties' submission support[] an award" adverse to the Debtor. *Acands*, 435 F.3d at 259-60. The Arbitration Stay Order precisely tracks *Acands*' reasoning—███████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███." Arbitration Stay Order ¶ 16.

35. Such an imbalance in ability to prosecute the claims and realize potential recoveries is not only inherently unfair, ███████████████████████████████, it may also impinge on FBG's due process rights. ███████████████████████ Given that the Parties' claims and counterclaims are so heavily intertwined, such that bifurcation would be impossible without impairing FBG's rights, the Arbitration should be stayed until both Parties can proceed on equal footing. FBG submits that Marelli Europe's speculative chances of success and recovering for the benefit of the estates are outweighed by the certain costs and burdens that would be imposed on both Parties should the stay be lifted in the manner suggested by the Debtors.

36. Additionally, FBG believes that the Debtors' judicial economy arguments are grossly overstated. Per the Milestones of the DIP Credit Agreements, the Debtors are required to confirm a Chapter 11 Plan by December 8, 2025. As such, FBG disputes that staying the litigation, pending the resolution of the Chapter 11 Cases, will result in any significant delays to the

11

Arbitration proceedings. ███████████████████████████████████████████████████████████████████████████████████████████████████████, in all likelihood, staying the Arbitration for a few months will not seriously alter the expected timeline of the proceedings. ████████████████████████████████████████████████████████████████████████, there is no immediate need for relief to avoid irreparable harm to the Debtors.

37. Moreover, FBG fails to see how staying the Arbitration at this stage would require Marelli Europe to incur needless expenses in revising submissions and duplicating work product, as the Debtors suggest. *See* Motion at ¶ 16. It is not clear how or why the course of these Chapter 11 Cases would affect the underlying arguments and strategies of Marelli Europe, given that the facts and circumstances giving rise to the claims and counterclaims all arose pre-petition█████████████████████████████████████████████████████████████████████████████████. Temporarily pausing the proceeding will not negate the work that has been done nor require Marelli Europe to expend any additional resources. Ironically, the Debtors' concerns that the estates will lose value are realized by forcing the Parties to jump through additional procedural steps and re-litigate these issues through this Motion.

C. **Alternatively, FBG Should be Granted the Same Relief as the Debtors**

38. In the event the Court is inclined to grant the request for stay relief, equity demands that the stay should be lifted to the fullest extent for both Parties, including any right of FBG to assert its counterclaim as a setoff, if applicable. *See In re Countryside Manor, Inc.*, 188 B.R. 489, 491 (Bankr. D. Conn. 1995) ("Where a debtor institutes a lawsuit and then invokes the protection of [the automatic stay] on a counterclaim, the situation warrants a very thoughtful scrutiny . . . . [T]he court has an equitable duty to grant a setoff when a debtor moves outside the confines of the

bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum.") (alterations in original) (quoting *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165-68 (2d Cir. 1979)); *see also Massey-Ferguson, Inc. v. Central Equip. & Serv. Co., Inc. (In re Central Equip. & Serv. Co., Inc.)*, 61 B.R. 986, 988 (Bankr. N.D. Ga. 1986) (granting a creditor relief from stay to assert its counterclaim as a setoff against the debtor, notwithstanding the creditor's failure to file a proof of claim in the bankruptcy case).

39. From the outset of these Chapter 11 Cases, the Debtors invoked the authority of the Court to reiterate and enforce the effect of a worldwide stay through the Stay Enforcement Order, with the goals of affording the Debtors "a breathing spell" and to protect them from potential adverse actions by certain vendors and creditors. *See* Stay Enforcement Motion at ¶¶ 9, 12. The Debtors should not be able to use the automatic stay as a shield while simultaneously seeking to wield it as a sword against FBG's rights. *See In re Jandous Elec. Const. Corp.*, 106 B.R. 48 (Bankr. S.D.N.Y. 1989) ("A debtor may not use the automatic stay as a sword when the debtor is the plaintiff in a pending nonbankruptcy suit. The purpose of the stay is the protection of the debtor, but when the debtor is in the position of the assailant, rather than the defendant, it would be inequitable to invoke the stay against the defendant's counterclaim . . .").

*[Remainder of page left intentionally blank]*

175317841.7

**CONCLUSION**

WHEREFORE, FBG respectfully requests that the Court enter an Order: (i) (a) denying the Debtors' Motion and staying the Arbitration, or, (b) in the alternative, lifting the stay for both Parties to litigate their claims to the fullest extent, including any rights to assert setoffs; and (ii) granting any other relief that the Court deems just and appropriate.

Dated: August 11, 2025

                               **FOX ROTHSCHILD LLP**

                               */s/ Stephanie Slater Ward*
                               Stephanie Slater Ward (No. 6922)
                               1201 N. Market Street, Suite 1200
                               Wilmington, DE 19801
                               Telephone: (302) 654-7444
                               Facsimile: (302) 656-8920
                               Email: sward@foxrothschild.com

                                      -and-

                               Jesse M. Harris (admitted *pro hac vice*)
                               Two Commerce Square
                               2001 Market Street, Suite 1700
                               Philadelphia, PA 19103
                               Telephone: (215) 299-2000
                               Facsimile: (215) 299-2150
                               Email: jesseharris@foxrothschild.com

                               *Counsel to First Brands Group, LLC*

175317841.7