**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>MARELLI AUTOMOTIVE LIGHTING USA LLC, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 25-11034 (CTG)<br>)<br>) (Jointly Administered)<br>)<br>) **Hearing Date: October 9, 2025 at 10:00 a.m. (ET)**<br>)<br>) **Obj Deadline: October 2, 2025 at 4:00 p.m. (ET)**<br>) |

**MOTION OF DEBTORS FOR ENTRY
OF AN ORDER (I) EXTENDING THE DEBTORS'
EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

**Preliminary Statement**

1. The Debtors request that the Court grant a 120-day extension of the Exclusivity Periods (as defined herein). The Debtors commenced these chapter 11 cases with several goals: (a) obtaining much-needed liquidity injection on an expedited basis; (b) breaking the deadlock between key stakeholders; (c) stabilizing operations worldwide; and (d) implementing a

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/Marelli. The location of Marelli Automotive Lighting USA LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 26555 Northwestern Highway, Southfield, Michigan 48033.

[2] A detailed description of the Debtors and their business, including the circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Slump, Chief Executive Officer of Marelli Automotive Lighting USA, LLC, in Support of First Day Motions,* [Docket No. 20] (the "Slump Declaration") and the *Declaration of Tony Simion, Managing Director of Alvarez & Marsal North America, LLC, in Support of First Day Motions* [Docket No. 19] (the "Simion Declaration", and together with the Slump Declaration, the "First Day Declarations"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declarations.

value-maximizing, comprehensive restructuring that allows Marelli to remain a key player and top tier-1 auto-supplier for years to come. And since filing these chapter 11 cases a mere three months ago, the Debtors have made significant progress towards achieving these goals.

2. While work remains to be done, and hard-fought negotiations continue, the Debtors have taken significant strides towards a value-maximizing exit from chapter 11 through the intensive efforts of the Debtors' management, board and its special committee, employees, and advisors. Significant progress was made prior to June 11, 2025 (the "Petition Date"), whereby the Debtors filed these cases with the support of the Company, Mizuho, the Ad Hoc Group of Senior Lenders, and the Sponsor as memorialized through the Restructuring Support Agreement.

3. The Debtors have maintained an ongoing dialogue and continue to build consensus on a path to a confirmable chapter 11 plan and emergence with key constituents throughout these chapter 11 cases. This legwork has resulted in the Debtors obtaining $1.1 billion of new-money DIP financing on a consensual basis, approval of important procedural and operational relief to ensure a smooth transition into chapter 11, deals with hundreds of trade vendors to allow continued delivery of goods and services, and postpetition arrangements with numerous key customers. Additionally, the Debtors have filed their voluminous schedules and statements and held two 341 meetings.

4. These efforts and accomplishments have allowed the Debtors and their management, employees, and advisors to turn their focus to preparation of a fulsome business plan. Developing, formulating, and advancing the business plan and related workstreams require input, analysis, and coordination from the Debtors' management, employees, and advisors across each of the 26 jurisdictions where they operate to prepare and develop a top-to-bottom analysis of each Debtor and associated line of business. Developing and advancing the business plan serves as a

basis for the path to emergence and, accordingly, requires input from key constituents, including namely the DIP Lenders (as defined in the DIP Orders[3]) and the official committee of unsecured creditors (the "Committee").

5. In short, the Debtors have made substantial progress in these chapter 11 cases, including, among other things:

- obtaining $1.1 billion of new-money DIP financing on a consensual basis after significant negotiations and discussions with the DIP Lenders, Committee, and Mizuho;

- stabilizing the Debtors' business operations;

- obtaining relief that has enabled the Debtors to continue operating their businesses in these chapter 11 cases, including obtaining approval of a number of "first day" motions and "second day" motions;

- working and negotiating with the Committee, the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Ad Hoc Group of Senior Lenders, prepetition vendors, customers, and numerous other interested parties in these chapter 11 cases toward a value-maximizing exit from bankruptcy;

- negotiating over 400 trade agreements with trade vendors to obtain customary trade terms consistent with ordinary course practice;

- addressing numerous questions, concerns, and issues raised by employees, vendors, customers, and other parties in interest;

- coordinating with the Committee and the U.S. Trustee to provide requested information on a variety of issues and comply with the reporting requirements under the Bankruptcy Code (as defined herein);

---

[3] "DIP Orders" means, collectively, the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 109], the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 355], and the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 449].

- preparing and filing their schedules of assets and liabilities and statements of financial affairs on August 11, 2025, for 76 individual Debtor entities, totaling over 17,000 pages of documentation;

- completing a two-session 341 meeting;

- preparing for and attending hearings in the chapter 11 cases; and

- preparing and filing retention applications for the Debtors' professionals.

6. Notwithstanding the substantial progress the Debtors have made to date, certain tasks remain before the Debtors may emerge from chapter 11. Preventing the potential for disruption from competing chapter 11 plan proposals at this juncture is critical as the Debtors work with their stakeholders on a value-maximizing exit from chapter 11. An extension of the Exclusivity Periods is in the best interests of the Debtors, their estates, and all stakeholders as it will allow the Debtors to facilitate a successful conclusion to these chapter 11 cases.

7. An extension of the Exclusivity Periods is also consistent with the current milestones under the Debtors' restructuring support agreement and DIP credit agreement. In particular, the current milestones include: (a) filing of a plan and disclosure statement by January 29, 2026; (b) approval of the disclosure statement by March 5, 2026; (c) entry of the confirmation order by May 4, 2026; and (d) emergence by June 13, 2026.

8. Currently, the deadline by which the Debtors have the exclusive right to file a chapter 11 plan (the "Filing Exclusivity Period") and solicit votes thereon (the "Solicitation Exclusivity Period" and, together with the Filing Exclusivity Period, the "Exclusivity Periods") will expire on October 9, 2025 and December 8, 2025, respectively, absent further order of the Court. If the Motion is granted, the extended Filing Exclusivity Period would expire on February 6, 2026, and the extended Solicitation Exclusivity Period would expire on April 7, 2026. The Debtors will use the extended Exclusivity Periods to continue to negotiate and refine the terms of a restructuring and negotiate consensus around the plan, which will ultimately pave the way for

the Debtors to confirm the plan and expeditiously emerge from these chapter 11 cases. For these and the reasons discussed below, the Debtors submit that a 120-day extension of exclusivity is appropriate.

## Relief Requested

9. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) extending (i) the Filing Exclusivity Period by 120 days through and including February 6, 2026, and (ii) the Solicitation Exclusivity Period by 120 days through and including April 7, 2026, without prejudice to the Debtors' rights to seek further extensions of the Exclusivity Periods, and (b) granting related relief. Absent the relief requested herein, the Filing Exclusivity Period will expire on October 9, 2025, and the Solicitation Exclusivity Period will expire on December 8, 2025.[4]

## Jurisdiction and Venue

10. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the

---

[4] Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." Accordingly, Local Rule 9006-2 automatically extends the Filing Exclusivity Period pending the Court's consideration of the relief requested by this Motion.

9

Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The statutory bases for the relief requested herein are sections 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 9006-2 and 9013-1.

**Background**

13. The Debtors, together with their non-Debtor affiliates (collectively, "Marelli" or the "Company") are one of the largest international automotive parts suppliers in the world and a pioneer in motorsports and in automobile manufacturing and design. With its headquarters in Saitama, Japan and over 46,000 employees located in twenty-four countries around the world, Marelli designs and produces sophisticated technologies for leading automotive manufacturers, including lighting and sensor integrations, electronic systems, software solutions, and interior design products, and collaborates with motor sports teams and other industry leaders to research and develop cutting-edge, high-performance automotive components.

14. On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 12, 2025, the Court entered an order [Docket No. 102] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On June 25, 2025, the U.S. Trustee appointed the Committee

[Docket No. 184].[5]  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### Basis for Relief

15.     Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.  Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).  Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Public Serv. Co. of New Hampshire,* 88 B.R. 521, 533-534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility") (quoting *In re Lake in the Woods,* 10 B.R. 338, 340, 345 (E.D. Mich. 1981)).  Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.,* 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

16.     Courts within the Third Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.,* 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.,* 208 B.R.

---

[5]  On July 2, 2025, the U.S. Trustee filed the *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 230].  On September 10, 2025, the U.S. Trustee filed the *Second Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 922].

11

661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.,* 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.,* 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods. These factors include, but are not limited to, the following:

(a) the size and complexity of the case;

(b) the existence of good-faith progress towards reorganization;

(c) whether the debtor is paying its debts as they become due;

(d) whether the debtor has made progress negotiating with creditors;

(e) the length of time a case had been pending; and

(f) whether the debtor is seeking an extension to pressure creditors.

*See In re Cent. Jersey Airport Servs., LLC,* 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.,* 87 B.R. at 834; *see also Dow Corning,* 208 B.R. at 664-65 (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.,* 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

17. Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g., Express One,* 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.,* 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.,* 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two of the factors in holding that cause existed to extend exclusivity). For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and

solicit acceptances of such a plan.  H.R. No. 95-595, at 231-232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco,* 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

18. As set forth below, the Debtors' chapter 11 cases satisfy the relevant factors and, thus, sufficient "cause" exists to extend the Exclusivity Periods as provided herein.  There is ample precedent in this district and others for an initial extension of exclusivity as the Debtors seek here. *See, e.g., In re Accuride Corp.,* No. 24-12289 (JKS) (Bankr. D. Del. Feb. 12, 2025) (granting an initial extension of the exclusive periods by approximately ninety days); *In re Am. Tire Distribs., Inc.,* No. 24-12391 (CTG) (Bankr. D. Del. Feb. 6, 2025) (same); *In re Tupperware Brands Corp.,* No. 24-12156 (BLS) (Bankr. D. Del. Jan, 10, 2025) (same); *In re Vyaire Med. Inc.,* No. 24-11217 (BLS) (Bankr. D. Del. Sept. 27, 2024) (same); *In re Express, Inc.,* No. 2410831 (KBO) (Bankr. D. Del. Sept. 9, 2024) (same).

**I.    The Debtors' Chapter 11 Cases Are Large and Complex.**

19. It is clear that the Debtors' capital structure—which as of the Petition Date consisted of approximately $4.9 billion in funded debt obligations—is large and complex.  The 76 Debtors have obligations to a tremendous number of stakeholders across the globe, including approximately 46,000 employees as of the Petition Date, and a wide variety of parties in interest, including vendors, customers, creditors, facility and equipment lessors, other contractual counterparties, and local, state, and federal agencies.

13

20. Further, the worldwide scope of the Debtors' operations and the complexity of their capital structure means that the Debtors must navigate a number of complex issues during the chapter 11 process. The Debtors and their advisors have spent (and continue to spend) significant amounts of time coordinating with parties in interest and non-Debtor affiliates around the world, from navigating the complexities of operating in 26 countries to addressing the operational overhang for the Debtors' affiliates resulting from the chapter 11 cases. As such, administering these chapter 11 cases requires significant input from the Debtors' management team and advisors on a wide range of complicated matters necessary to bring structure and consensus to a large and complex process. Accordingly, the complexity of these chapter 11 cases weighs in favor of extending the Exclusivity Periods.

21. Both Congress and courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See In re Express One Intl, Inc.,* 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"). Thus, the size and complexity of these chapter 11 cases alone provides sufficient cause for the Court to extend the Exclusivity Periods.

    **II.**    **The Debtors Have Made Significant Progress in Negotiating in Good Faith with Creditors and Administering These Chapter 11 Cases.**

22. Leading up to and since the Petition Date, the Debtors have made significant progress in negotiating with their stakeholders and administering these chapter 11 cases, which warrants an extension of the Exclusivity Period. The Debtors commenced these chapter 11 cases with limited liquidity and have moved expeditiously through these chapter 11 cases and advanced

discussions among the Debtors' key stakeholders regarding global consensus in these chapter 11 cases.

23. During these chapter 11 cases, the Debtors, among other things, (a) secured various forms of operational first- and second-day relief, (b) obtained entry of a final order authorizing the Debtors to obtain postpetition financing, (c) obtained authority to retain section 327 and ordinary course professionals, (d) coordinated with ordinary course professionals to prepare and file over 100 declarations of disinterestedness, (e) negotiated over 400 trade agreements with vendors to obtain customary trade terms consistent with ordinary course practice, (f) maintained close communications with the Ad Hoc Group of Senior Lenders, the DIP Lenders, the Committee, and Mizuho, including weekly teleconferences; and (g) filed the schedules and statements of financial affairs for all 76 Debtor entities—a major undertaking involving filing over 17,000 of pages of documentation given the scale of the Debtors' operations. The Debtors' substantial progress administering these chapter 11 cases weighs in favor of an extension of the Exclusivity Periods.

### III. The Debtors Are Paying Their Bills as They Come Due.

24. Since the Petition Date, the Debtors have paid their postpetition debts in the ordinary course of business or as otherwise provided by Court order.

### IV. Relatively Little Time Has Elapsed in These Chapter 11 Cases.

25. The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes fewer than four months after the Petition Date. As discussed above, during this short time, the Debtors have accomplished a great deal all while the Debtors continue to work diligently with all stakeholders to ensure widespread support of the chapter 11 plan and disclosure statement. Additionally, the fact that this is the Debtors' first request for an extension further supports granting the requested extension.

### V. An Extension of the Exclusivity Periods Will Not Pressure Creditors.

26. The Debtors' restructuring process is intended to confirm a plan that maximizes the value of the Debtors' estates for all stakeholders. Since the commencement of these chapter 11 cases, the Debtors have worked, and will continue to work, diligently and constructively with stakeholders to build additional consensus for the Debtors' proposed chapter 11 transactions. The Debtors' exclusivity extension request is not intended to pressure creditors to submit to the Debtors' restructuring demands but to provide sufficient time for the Debtors to file and eventually confirm a value-maximizing chapter 11 plan and implement the transactions contemplated thereby without the disruption and distraction created by competing plan proposals. Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will benefit the Debtors' estates, their creditors, and all other key parties in interest.

27. An objective analysis of the relevant factors demonstrates that the Debtors are doing everything that they should be doing as chapter 11 debtors to facilitate a successful conclusion to these chapter 11 cases. Accordingly, sufficient cause exists to extend the Exclusivity Periods as provided herein.

### Notice

28. The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) Paul Hastings LLP and Morris James LLP, as co-counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) Mayer Brown LLP, as counsel to the DIP Agent; (i) Davis Polk & Wardwell LLP, as counsel to Mizuho Bank, Ltd., in all capacities other than as Prepetition Agent; (j) Young Conaway Stargatt & Taylor, LLP, as counsel to Mizuho Bank, Ltd., in its capacity as Prepetition Agent; (k) Akin Gump Strauss Hauer

& Feld LLP and Cole Schotz P.C., as counsel to the Ad Hoc Group of Senior Lenders; (1) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Sponsors; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A,** (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: September 25, 2025
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Laura Davis Jones (DE Bar No. 2436) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | Nicholas M. Adzima (admitted *pro hac vice*) |
| Edward A. Corma (DE Bar No. 6718) | Evan Swager (admitted *pro hac vice*) |
| 919 North Market Street, 17th Floor | 601 Lexington Avenue |
| P.O. Box 8705 Wilmington, Delaware 19899 (Courier 19801) | New York, New York 10022 |
| Telephone: (302) 652-4100 | Telephone: (212) 446-4800 |
| Facsimile: (302) 652-4400 | Facsimile: (212) 446-4900 |
| Email: ljones@pszjlaw.com <br> tcairns@pszjlaw.com <br> ecorma@pszjlaw.com | Email: joshua.sussberg@kirkland.com <br> nicholas.adzima@kirkland.com <br> evan. swager@kirkland.com |
| *Co-Counsel for the Debtors and Debtors in Possession* | *Co-Counsel for the Debtors and Debtors in Possession* |