**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MARELLI AUTOMOTIVE LIGHTING USA LLC, *et al.*,[1] | ) | Case No. 25-11034 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**DECLARATION OF NICHOLAS GROSSI
IN SUPPORT OF THE MOTION OF DEBTORS FOR
ENTRY OF AN ORDER (I) APPROVING THE DEBTORS' ENTRY
INTO THE NEW AR FACILITY TERM SHEET, (II) AUTHORIZING PAYMENT
OF FEES AND EXPENSES THEREUNDER, AND (III) GRANTING RELATED RELIEF**

I, Nicholas Grossi, hereby declare under penalty of perjury:

1.      I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), the retained financial advisor for the debtors and debtors-in-possession (collectively, the "Debtors," and together with their non-debtor subsidiaries, the "Company") in the above-captioned chapter 11 cases.

2.      I submit this declaration (this "Declaration") in support of the *Motion of Debtors for Entry of an Order (I) Approving the Debtors' Entry into the New AR Facility Term Sheet, (II) Authorizing Payment of Fees and Expenses Thereunder, and (III) Granting Related Relief* (the "Motion"),[2] filed on December 10, 2025.

3.      Although A&M is expected to be compensated for its work as the Debtors' restructuring advisor and financial advisor in these chapter 11 cases, I am not being compensated

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/Marelli.  The location of Marelli Automotive Lighting USA LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 26555 Northwestern Highway, Southfield, Michigan 48033.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

separately for this Declaration or testimony in connection therewith.   Except as otherwise indicated, all facts set forth in this Declaration are based upon (i) my personal knowledge, (ii) my review of relevant documents, (iii) my discussions with the Debtors' management team, other members of the A&M team, and the Debtors' other advisors, (iv) my review of information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and (v) my views based upon my experience and knowledge.   I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors.

### Professional Background and Qualifications

4.    A&M is a leading restructuring consulting firm with extensive experience providing high quality, specialized management and restructuring advisory services to debtors and distressed companies.   Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management, and creditor and risk management advisory services.   A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including (i) developing or validating forecasts, business plans, and related assessments of strategic positions; (ii) monitoring and managing cash, cash flow, and supplier relationships; (iii) assessing and recommending cost reduction strategies; and (iv) designing and negotiating financial restructuring packages.   In addition, A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications.   A&M is known for its ability to work alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

5.    I am a Managing Director at A&M and have more than 18 years of experience serving as a financial advisor in distressed situations and providing restructuring and performance

improvement services to companies in a diverse range of industries, including communications, retail, and automotive. I hold a Master of Business Administration from DePaul University and a bachelor's degree in management from Purdue University.

6.      As a financial advisor, I have conducted numerous financial analyses for various companies, including SVB Financial Group, Windstream Holdings, Inc., Diamond Offshore Drilling, Inc., Seadrill Ltd., UCI International, Specialty Retail Shops Holding Corp., Sears Holding Corporation, Verso Corporation, Exide Technologies, Bank of America, Chemtura Corporation, the New York Department of Education, Global Power, Envision Hospital Systems, and Kimball Hill, Inc.

## The New AR Facility

7.      I am familiar with the Debtors' capital structure, day-to-day operations, business and financial affairs, liquidity forecasts, and books and records. Members of the A&M team and I have assisted the Debtors with their cash management and cash forecasting efforts, including, among other things, preparing thirteen-week budgets for the Debtors and preparing financial forecasts to size the Debtors' financing needs.

8.      As of the Petition Date, the Debtors were party to approximately twenty receivable factoring arrangements. The Debtors' factoring arrangements provide short-term liquidity by allowing the Debtors to realize accounts receivable more quickly than the receivable's payment terms, effectively allowing the Debtors to obtain payment on their accounts receivable in days— as opposed to 4–12 weeks—in exchange for a nominal fee. As a result, if the Debtors were to lose access to a factoring facility, they could face a short-term liquidity shortfall as accounts receivables that would typically be realized quickly would revert to standard payment terms. In addition, the

loss of access to a factoring facility could create long-term liquidity instability as the Debtors would lose the ability to normalize their cash flows.

9.       I understand that, pursuant to their own terms, several of the Debtors' factoring arrangements are set to expire in January 2026 (the "Lapsed Facilities"). I understand that, although the Debtors engaged in discussions with the providers of the Lapsed Facilities, the Debtors were unable to obtain an actionable proposal to renew the facilities. Based on A&M's work analyzing the Debtors' ongoing liquidity needs, my experience working with the Debtors, and my discussions with the Debtors' management and other advisors, failing to replace Lapsed Facilities will generate an adverse liquidity impact of approximately $140 million if the receivables factored through the Lapsed Facilities revert to normal payment terms. If the Lapsed Facilities are not replaced, the Debtors' ability to, among other things, administer their estates during these chapter 11 cases and fund operations through the June 13, 2026 emergence date milestone under the DIP Orders will be jeopardized.

10.       I am familiar with the New AR Facility Term Sheet and its material terms. I believe that, if placed, the New AR Facility will fully offset the loss of the liquidity generated by the loss of the Lapsed Facilities. Accordingly, I believe that replacing the Lapsed Facilities with the New AR Facility is necessary to provide the Debtors with the liquidity necessary to operate their business in the ordinary course during these chapter 11 cases and, ultimately, achieve their goal of emerging on or before June 13, 2026.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 12, 2025

By: /s/ Nicholas Grossi
Name: Nicholas Grossi
Title:  Managing Director of
Alvarez & Marsal North America, LLC