**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MARELLI AUTOMOTIVE LIGHTING USA LLC, *et al.*,[1] | Case No. 25-11034 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: January 7, 2026, at 11:30 a.m. (ET)** |
| | **Obj Deadline: December 31, 2025, at 4:00 p.m. (ET)** |

**DECLARATION OF
TONY SIMION IN SUPPORT OF
THE DEBTORS' OMNIBUS MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO ASSUME CERTAIN UNEXPIRED
LEASES, (II) AUTHORIZING THE ASSUMPTION NOTICE
RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

I, Tony Simion, hereby declare under penalty of perjury under 28 U.S.C. § 1746:

1.      I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"),[2] which has served as financial and restructuring advisor to the above-captioned debtors and debtors in possession (collectively, the "Debtors") prior to and throughout these chapter 11 cases.

2.      I submit this declaration (the "Declaration") in support of the *Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases, (II) Authorizing the Assumption Notice Related Thereto, and (III) Granting Related Relief* [Docket No. 1434] (the "Motion").

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/Marelli.  The location of Marelli Automotive Lighting USA LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 26555 Northwestern Highway, Southfield, Michigan 48033.

[2]    Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Motion.

## Professional Background and Qualifications

3.      I am a Managing Director at A&M and have been engaged as restructuring advisor to the Debtors since March 2025.  I have a Master of Business Administration from the Babcock School of Management at Wake Forest University.   I am also a Certified Insolvency and Restructuring Advisor and a member of the Association of Insolvency and Restructuring Advisors, the Turnaround Management Association, and the American Bankruptcy Institute.  I have more than twenty years of restructuring experience, both as a principal and as an advisor helping clients in restructuring and turnaround situations, preparing business plans and assessments, developing and implementing financing and accounting departments, and managing liquidity and treasury departments.   I have also led and implemented a myriad of turnaround and restructuring transactions.  Some notable, publicly disclosed restructuring assignments that I have been involved with include *In re Dynata, LLC*, Case No. 24-11057 (TMH) (Bankr. D. Del. 2024); I*n re Washington Prime Grp. Inc.*, Case No. 21-31948 (MI) (Bankr. S.D.T.X. 2021); *In re Sable Permian Res., LLC*, Case No. 20-33193 (MI) (Bankr. S.D. Tex. 2020).

4.      A&M is a leading restructuring consulting firm with extensive experience providing high quality, specialized management and restructuring advisory services to debtors and distressed companies.  Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management, and creditor and risk management advisory services.  A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including (i) developing or validating forecasts, business plans, and related assessments of strategic positions; (ii) monitoring and managing cash, cash flow, and supplier relationships; (iii) assessing and recommending cost reduction strategies; and (iv) designing and negotiating financial restructuring packages.   In addition, A&M provides advice on specific aspects of the turnaround process and helps manage

complex constituency relations and communications.  A&M is known for its ability to work alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

5.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' employees, operations, lease portfolio, finances, and information learned from my review of relevant documents, information supplied to me by other members of the Debtors' management and their advisors (including A&M employees working under my supervision), or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations, financial affairs, and restructuring and liquidity-management initiatives.  I am over the age of eighteen and am authorized to submit this Declaration on behalf of the Debtors.  If called upon to testify, I could and would testify competently to the facts set forth in this Declaration. I am authorized by the Debtors to submit this Declaration.

## The Assumed Leases

6.      The Debtors are seeking to assume the Leases for properties where the Debtors intend to continue operations post-emergence.  Over the last several months, the Debtors have conducted a detailed and thorough analysis of the Debtors' lease portfolio in anticipation of the Assumption Deadline.  The Debtors and their advisors' analysis of the lease portfolio required an in-depth review of the agreement terms, an assessment of the effect that each agreement has on the business, and a calculation of the expected Cure Costs, if any, among other things.  Based on my knowledge of this process and the information provided to me, it is my opinion that assuming the Leases is in the best interest of the Debtors' estates and ongoing operations.

7.      The Leases are related to office space, engineering, manufacturing, distribution, shipping, logistics, and warehousing facilities, and other premises that the Debtors use in the ordinary course of business. The Leases, many of which are located in countries outside the United

States, are necessary for the Debtors' ongoing business operations, such that rejecting them would severely disrupt their manufacturing and distribution operation. Assuming the Leases allows the Debtors to avoid unnecessary costs in finding different facilities and moving resources at a critical time in their chapter 11 cases. Moreover, the Debtors' operations would be further adversely affected if they were unable to enter into alternative agreements similar to the Leases. In many cases, it would be challenging or impracticable for the Debtors to find an alternative agreement on the same terms and conditions as set forth in the Leases. The Leases are essential to the Debtors' go-forward business plan, and losing these facilities would impose significant burdens on the estate. Therefore, it is my opinion that such Leases should be assumed.

8.      Further, it is my belief that the Cure Costs necessary to cure any known defaults under the Leases as of the date hereof are reasonable under the circumstances. The Cure Costs listed on Exhibit 1 to Exhibit A of the Motion are estimated to be approximately $415,112 in the aggregate as of the date hereof, which in addition to other considerations, have led me and the Debtors to believe that it is in the best interest of the estate to assume the Leases. Further, some of the Leases have more favorable rates when compared to similar spaces in their respective local markets, while assuming others both preserves business operations and avoids costs associated with enforcing rejections on foreign landlords. Therefore, the long-term strategic value in assuming the Leases outweigh the Cure Costs associated therewith.

9.      Moreover, the Debtors' request to assume the Leases is part of their larger restructuring efforts and intent to emerge from these chapter 11 cases as a viable business. It is my belief that the Debtors' prior performance under the Leases, diligence in remaining current on postpetition obligations, and ability to pay Cure Costs amount to adequate assurance that they will continue to perform their obligations under the Leases. Further, it is my belief that the Debtors

have sufficient liquidity and access to financing to continue to meet their obligations under the Leases and to pay all Cure Costs.  Accordingly, I believe the Debtors are able to provide adequate assurance of future performance under the Leases as contemplated by 365(b)(1)(C) of the Bankruptcy Code.

10.    I understand that the Leases are essential to the Debtors' go-forward business plan and losing these Leases would impose significant burdens on their operations.  Accordingly, the Debtors' decision to assume the Leases is in the best interests of the Debtors and their estates.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 24, 2025

/s/ Tony Simion

Tony Simion
Managing Director
Alvarez & Marsal, LLC