**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MARELLI AUTOMOTIVE LIGHTING USA LLC, *et al.*,[1] | Case No. 25-11034 (CTG) |
| Debtors. | (Jointly Administered) |

**FIRST REPORT OF LORI LAPIN JONES, ESQ., FEE EXAMINER,
ON INTERIM APPLICATIONS FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF RETAINED PROFESSIONALS**

Lori Lapin Jones, Esq.*,* Fee Examiner ("Fee Examiner"), hereby files her first report and

recommendations ("First Report") pursuant to the Fee Examiner Order (defined below) with respect

to the interim applications for allowance of compensation and reimbursement of expenses of certain

professionals retained by the Debtors (defined below) and the Creditors' Committee (defined

below).

**PRELIMINARY STATEMENT**

1.   This Report covers  interim applications for compensation and reimbursement of

expenses (each an "Interim Application" and collectively the "Interim Applications") by four

professionals (each a "Retained Professional" and collectively the "Retained Professionals"). The

Interim Applications are the second interim compensation applications in these cases and cover a

period from October 1, 2025 through December 31, 2025. The Interim Applications do not cover all

professionals retained in these cases for the second interim compensation period. As further

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/Marelli. The location of Marelli Automotive Lighting USA LLC's principal place of business is 26555 Northwestern Highway, Southfield, Michigan 48033.

compensation applications are filed and reviewed for the second interim period, the Fee Examiner will file additional reports.

2.   Following a comprehensive review of the Interim Applications and a consultation process with the Retained Professionals, the Fee Examiner makes the recommendations set forth in this First Report with the consent of each Retained Professional as to its respective Interim Application.

## BACKGROUND SUMMARY

3.   On June 11, 2025 ("Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Court"). On June 12, 2026, the Court entered an order authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases [Docket No. 102].

4.   On June 25, 2025, the United States Trustee for Region 3 ("U.S. Trustee") appointed an Official Committee of Unsecured Creditors ("Creditors' Committee") [Docket No. 184] which appointment was amended [Docket Nos. 230, 922, and 1780].

## INTERIM COMPENSATION PROCEDURES

5.   On August 5, 2025, the Court entered the Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief ("Interim Compensation Order") [Docket No. 477]. The Interim Compensation Order sets forth Compensation Procedures (defined therein) which permit Retained Professionals to be partially paid on an interim and monthly basis. In summary, each Retained Professional is authorized to file and serve a detailed monthly fee statement ("Monthly Fee Statement") on or after the fifth day following the month for which compensation is sought.

2

Following an objection period and the filing of a certificate of no objection, the Debtors are authorized to pay the Retained Professional 80% of fees and 100% of expenses set forth in the Monthly Fee Statement that are not subject to an objection. Retained Professionals have filed Monthly Fee Statements during these cases.

## APPOINTMENT OF THE FEE EXAMINER

6. By Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses dated January 15, 2026 ("Fee Examiner Order") [Docket No. 1515], Lori Lapin Jones, Esq. was appointed as the Fee Examiner in these cases (Fee Examiner Order at ¶ 1).

7. The Fee Examiner's duties and responsibilities include reviewing compensation applications for compliance with applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules") and for attorneys, whether the firm has made a reasonable effort to comply with the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 By Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 ("U.S. Trustee Guidelines").

8. Following review of each compensation application, the Fee Examiner is tasked with providing each Retained Professional a report on its respective fee application ("Initial Report") designed to quantify and present factual data and legal issues relevant to whether the requested compensation meets applicable standards. Following service of the Initial Report, the Fee Examiner and Retained Professional are to communicate concerning issues, if any, raised in the

Initial Report with the goal of achieving a consensual resolution. Twenty-five days after service of the Initial Report, the Fee Examiner is to file a Final Report in a format designed to quantify and present factual data and legal issues relevant to whether the compensation requests comply with applicable standards and to inform the Court, in general terms, of all proposed consensual resolutions of the compensation requests.

9. Excepted from the Fee Examiner's charge are the following: (a) review of fees for professionals employed by the Debtors in accordance with an order of the Court approving the retention of ordinary course professionals; (b) applications for reimbursement of expenses by members of the Creditors' Committee (incurred in such capacity); (c) any professional employed whose fees, or a portion thereof, have been preapproved by the Court as reasonable under section 328 of the Bankruptcy Code; (d) review of fees of professionals employed pursuant to section 363 of the Bankruptcy Code; and (e) requests for compensation submitted pursuant to Bankruptcy Code sections 503(b)(3) or 503 (b)(4) and/or for making a substantial contribution in these chapter 11 cases.

**WORK PERFORMED BY THE FEE EXAMINER**

10. The Fee Examiner was assisted in this engagement by National CRS, LLC as Database Service Provider ("NCRS") (Fee Examiner Order at ¶ 13). Retained Professionals transmitted to NCRS their respective time records in LEDES or excel format which NCRS downloaded into its proprietary software for review and analysis by the Fee Examiner.

11. A comprehensive and tailored process was employed by the Fee Examiner to review and assess each Interim Application and there was no preset goal to achieve a specific level of reductions or to achieve any reductions. Certain areas of examination are objective and if

reductions are warranted, they are easy to quantify. Certain areas of examination (including determinations of reasonableness and staffing) are subjective and as to those areas the Fee Examiner exercised her best judgment. In so doing, the Fee Examiner was mindful of the practical judgments that professionals make on an ongoing basis and often under time constraints and the complexity of these chapter 11 cases. The Fee Examiner's recommendations were also informed by the consultation process with Retained Professionals following issuance of the Initial Reports. In addition, as to certain Interim Applications, the Fee Examiner coordinated and consulted with the U.S. Trustee.

12. With respect to each Interim Application, the Fee Examiner reviewed: (a) the retention application; (b) the declaration of disinterestedness; (c) the Order approving retention of the Retained Professional; (d) supplemental declarations of disinterestedness or disclosures; (e) Monthly Fee Statements; and (f) the Interim Application including all exhibits. Thereafter, the Fee Examiner reviewed and analyzed time records in NCRS' proprietary software which allows for the review by multiple methods including, without limitation: by timekeeper; by date; by project category; searches by a targeted word or words; by Court hearing; by time spent in a day; for mathematical errors; etc. NCRS' software also allows the Fee Examiner to extract time entries and prepare charts based on specific searches.

13. Review of the Interim Applications was performed for compliance with, <u>inter alia</u>, (a) Bankruptcy Code section 330, (b) Federal Rule of Bankruptcy Procedure 2016, (c) Local Rule 2016-2, (d) the applicable retention order, (e) the Interim Compensation Order, and (f) U.S. Trustee Guidelines.

14. The Fee Examiner's review encompassed many specific areas including, but not limited to:

a. Rates charged;

b. Whether work performed fell within the scope of retention;

c. Necessity of services performed and benefit to the estate;

d. Overlap and duplication among firms and within a firm;

e. Excessive time spent on a particular task or filing;

f. Appropriateness of staffing;

g. Use of transitory timekeepers;

h. Timekeepers who billed a high number of hours in a day;

i. Level of attendance at hearings, at meetings, and on calls;

j. Time spent on the preparation of monthly fee statements;

k. Time spent on non-compensable tasks such as those not ordinarily billed to clients outside of bankruptcy;

l. Billing rates for non-working travel time;

m. Vague time entries;

n. Repetitive time entries;

o. Block billing;

p. Duplicate time entries; and

q. Mathematical errors.

15. The Fee Examiner also reviewed expenses for which reimbursement was sought and for certain expenses requested backup documentation or clarification. Expenses were also reviewed for a multitude of issues including, but not limited to:

a. Whether the amount charged was within the United States Trustee recommended caps for out-of-town meals, lodging, and overtime meals;

b. Ensuring that airfare was billed at coach rates;

c.  To determine whether the expense was non-compensable overhead;

d.  Reasonableness and that there was no markup on expenses charged; and

e.  Duplicate expenses.

16. Following the review of fees and expenses in the Interim Application, the Fee Examiner prepared a confidential Initial Report which set forth in detail objections or potential objections (if any) to specific time charges or expenses in the Interim Application. When appropriate, the Fee Examiner provided exhibits to support objections.

17. Following service of each Initial Report, and consistent with the Fee Examiner Order, the Fee Examiner conferred with the Retained Professional with a goal of reaching mutually satisfactory resolutions of objections or issues raised. Retained Professionals either accepted the fee and/or expense reductions recommended by the Fee Examiner in the Initial Report or provided detailed explanations and/or further information to address objections or potential objections raised in the Initial Report.  In the end, with respect to each objection raised, either the Retained Professional accepted the Fee Examiner's proposed reduction, provided the Fee Examiner with information to satisfy the objection raised, or the Fee Examiner and the Retained Professional reached an accord on specific reductions.

18. The Retained Professionals were responsive, reasonable, and cooperative.

## **RECOMMENDATIONS ON INTERIM APPLICATIONS**

19.  Set forth below are summaries of the Fee Examiner's review of each Interim Application, communications with each Retained Professional, and the Fee Examiner's recommendations with respect to the fees and expenses requested in each of the Interim Applications.

### *Debtors' Professionals*

**Firm: Alvarez & Marsal North America, LLC ("A&M")**
Role: Financial Advisors for Debtors and Debtors in Possession
Period Covered: October 1, 2025 – December 31, 2025 ("Second Application")
Fees Requested: $15,853,488.00
Expenses Requested: $203,556.61
Blended Hourly Rate for all Timekeepers: $767.43

20. A&M serves as financial advisors for the Debtors. A&M's Second Application covers a three-month period from October 1, 2025 through December 31, 2025. During the period covered by the Second Application, A&M billed 20,657.8 hours.

21. The Fee Examiner's Initial Report to A&M addressed the following issues: one duplicate time entry; use of transitory timekeepers; certain non-compensable time; travel time; vague and repetitive time entries; potential excessive time; and block billing.

22. Following a review of the Fee Examiner's Initial Report, A&M and the Fee Examiner conferred at which time A&M provided the Fee Examiner with additional information responsive to certain issues raised. A&M has agreed to a reduction of its fee request in the amount of $55,545.00. With this reduction, the Fee Examiner has no objection to an award on an interim basis of the balance of the fees requested in A&M's Second Application.

23. The Fee Examiner reviewed A&M's request for reimbursement of expenses and requested certain back-up documentation. A&M has agreed to a reduction of expenses in the amount of $3,170.00. With this reduction, the Fee Examiner has no objection to reimbursement on an interim basis of the balance of the expenses requested in A&M's Second Application.

*__Creditors' Committee's Professionals__*

**Firm**: Paul Hastings LLP ("__Paul Hastings__")
Role: Counsel to the Official Committee of Unsecured Creditors
Period Covered: October 1, 2025 – December 31, 2025 ("__Second Application__")
Fees Requested: $1,176,530.00
Expenses Requested: $6,788.96
Blended Hourly Rate for all Timekeepers: $1,572.48

24. Paul Hastings serves as counsel to the Creditors' Committee. Paul Hastings' Second Application covers a three-month period from October 1, 2025 through December 31, 2025. During the period covered by its Second Application, Paul Hastings billed 748.2 hours.

25. The Fee Examiner's Initial Report to Paul Hastings addressed the following issues: use of transitory timekeepers; non-compensable time; potential excessive time; and staffing at and frequency of internal calls/meetings.

26. Following a review of the Fee Examiner's Initial Report, Paul Hastings and the Fee Examiner conferred at which time Paul Hastings provided the Fee Examiner with certain additional information. Paul Hastings has agreed to a reduction of its fee request in the amount of $13,877.50. With this reduction, the Fee Examiner has no objection to an award on an interim basis of the balance of the fees requested in Paul Hastings' Second Application.

27. The Fee Examiner reviewed Paul Hastings request for reimbursement of expenses and has no objection to reimbursement in full of the expenses requested.

**Firm**: Morris James LLP ("__Morris James__")
Role: Delaware Counsel to the Official Committee of Unsecured Creditors
Period Covered: October 1, 2025 – December 31, 2025 ("__Second Application__")
Fees Requested: $82,026.00
Expenses Requested: $219.84
Blended Hourly Rate for all Timekeepers: $650.48

28. Morris James serves as Delaware counsel to the Creditors' Committee. Morris James' Second Application covers a three-month period from October 1, 2025 through December 31,

2025. During the period covered by its Second Application, Morris James billed 126.1 hours.

29. The Fee Examiner's Initial Report to Morris James raised the use of one transitory timekeeper.

30. Following a review of the Fee Examiner's Initial Report, Morris James agreed to a reduction of its fee request by $1,522.50. With this reduction, the Fee Examiner has no objection to an award on an interim basis of the balance of the fees requested in Morris James' Second Application.

31. The Fee Examiner reviewed Morris James' request for reimbursement of expenses and has no objection to reimbursement in full of the expenses requested.

**Firm: FTI Consulting Inc. ("FTI")**
Role: Financial Advisor to the Official Committee of Unsecured Creditors
Period Covered: October 1, 2025 – December 31, 2025 ("Second Application")
Fees Requested: $3,684,505.50
Expenses Requested: $47,703.98
Blended Hourly Rate for all Timekeepers: $885.80

32. FTI serves as financial advisor to the Creditors' Committee. FTI's Second Application covers a three-month period from October 1, 2025 through December 31, 2025. During the period covered by its Second Application, FTI billed 4,159.5 hours.

33. The Fee Examiner's Initial Report to FTI identified the following issues: use of transitory timekeepers; time spent on invoice preparation; scope of work; and potential excessive time.

34. Following a review of the Fee Examiner's Initial Report, FTI and the Fee Examiner conferred at which time FTI provided the Fee Examiner with additional information responsive to certain issues raised. FTI has agreed to a reduction of its fee request in the amount of $20,000.00. With this reduction, the Fee Examiner has no objection to an award on an interim basis of the balance of the fees requested in FTI's Second Application.

35. The Fee Examiner reviewed FTI's expenses and requested certain back-up documentation. FTI has agreed to a reduction of expenses in the amount of $238.94. With this reduction, the Fee Examiner has no objection to reimbursement on an interim basis of the balance of the expenses requested in FTI's Second Application.

## CONCLUSION

36. For the reasons set forth above, the Fee Examiner recommends (a) interim awards of compensation in the amounts requested net of the reductions agreed to by the Retained Professionals and (b) reimbursement of expenses in the amounts requested net of reductions agreed to by the Retained Professionals (if applicable), each as set forth in this First Report.

Dated: Great Neck, New York
April 6, 2026

**LORI LAPIN JONES PLLC**

/s/ Lori Lapin Jones
Lori Lapin Jones, Esq., Fee Examiner
98 Cutter Mill Road, Suite 255 South
Great Neck, New York 11021
Telephone: (516) 466-4110
Facsimile: (516) 466-4009
Email: ljones@jonespllc.com

11